By the Court.—Curtis, Ch., J.
The defendant, S. B. Moore, a country merchant at Wilkesbarre, Penn., when applied to by the plaintiffs in January, 1874, for a statement of the pecuniary condition of his firm, which consisted of his brother Oscar C. Moore and himself, and who bought goods on credit of the plaintiffs, stated in substance that their assets were §36,028.73, and that they owed $20,066.78. This showed a capital of $15,961.95.
The plaintiffs continued to sell on credit to the defendants until the latter owed them, in September, 1876, $4,069.70, part of which was for goods sold the defendants that month. In the course of that month the defendants made an insolvent assignment and claimed to be unable to pay anything.
It appears that when the defendant S. B. Moore made the statement of the financial condition of his firm to the plaintiffs, he omitted to mention that they owed their father $5,500 for capital to commence business with, for which then or subsequently a judgment note was given, and also that he omitted to mention that their firm were then indorsers of the notes of the defendant Oscar C. Moore for about $19,000.
As these omitted liabilities exceeded their capital, and would, if mentioned to the plaintiffs, probably have terminated the defendants’ credit with them, it is desirable to consider if these omissions can be reconciled with honesty and fair dealing on the part of the defendant, $. B. Moore.
It is but just to him, to say that he does not deny the fact of making the omissions, but it is difficult to be satisfied with his reasons for doing so. He states that not being asked about the indebtedness to his father, and not thinking about it, he did not speak oí it, and the same reason is in substance assigned for not speaking of the firm’s indorsements for Oscar C. Moore.
It is the most natural thing in the world, when a *264 man is seeking credit, and is asked by the person from whom he seeks it, about his pecuniary condition, that he should remember such liabilities as the defendant refers to. It is difficult to suppose that this defendant would forget at such a time about the note the defendants gave their father for capital in their business, especially as they remembered "to have it put in the form of a judgment note, not certainly with a view of prejudicing him in securing himself in a race with their other creditors then or at some future day. Even conceding that the failure to embrace this debt in their statement of liabilities to plaintiffs was a mental inadvertence consequent upon the plaintiffs not asking the defendant about it, which, in view of their having no notice of it, it was not easy for them to do, still it is asking too much to require the court to believe that for these same reasons the defendant did not disclose that they were liable as indorsers for one of their firm, in a sum far exceeding the amount of the capital they claimed in their statement to plaintiffs to have, unless there is stronger evidence to support such a theory than the papers on this appeal disclose.
The defendant was not obliged to answer a question, or to volunteer any statement, but having undertaken tp give a statement of the affairs of his firm, in order to get a credit from the plaintiffs, common 'honesty required him to give a truthful statement, and under such circumstances, there is as much fraud in a suppression to disclose a part of their liabilities in order to deceive the plaintiffs, as there would have been in a false representation of the amount of their assets.
It is impossible to reconcile these coincidences of alleged failures of memory on the defendant’s part in respect to the liabilities of his firm, and the other circumstances appearing in the case, with „what is commonly known as honesty and fair dealing among business men.
*265 The defendant must have known all along that the plaintiffs were relying upon his untrue statement, and if that untruthfulness arose from a temporary failure of memory at the time he made the statement, it was his duty to have corrected it, and not to have gone on for several months, until the purchases from plaintiffs were largely increased. It is absurd to suppose he did not think of these liabilities until the firm was forced to make an assignment. At that time, the note to their father, with interest, was $7,672.50, and the indebtedness for Oscar C. Moore was $19,943.51, and their remaining debts about as much more, while their stock, their chief assets, was sold by the assignee for $8,000.
The acts of the defendant are not consistent with good faith, and to sustain them as such, would be at variance with the settled principles on which mercantile transactions and commercial credit rest, and must in the nature of things be governed.
The order of tfie special term vacating the order of arrest, should be reversed, and the order of arrest re-instated.
Speir, J., concurred, Sedgwick, J. not voting.